FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
JUN 05 2024
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

*Ioan Sofinet*,

Plaintiff,

v.

1:24-CV-2450

*Truist Bank, Specialized Loan Servicing LLC, and Ameris Bank*,

Defendants.

## COMPLAINT FOR VIOLATION OF 42 USC 1983, FEDERAL LAWS, AND CONSTITUTIONAL RIGHTS

### Introduction

***1***. Plaintiff Ioan Sofinet ("Plaintiff") brings this action against Truist Bank, Specialized Loan Servicing LLC ("SLS"), and Ameris Bank ("Defendants") for violations of 42 U.S.C. § 1983, federal laws, and Plaintiff's constitutional rights.

### Jurisdiction and Venue

***2***. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) as this action arises under federal laws and involves the deprivation of Plaintiff's constitutional rights.

***3***. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and the property that is the subject of the action is situated in this district, specifically in Gwinnett County.

### Parties

**4**. Plaintiff Ioan Sofinet is a resident of Dacula, Georgia, and is the owner of the property located at 832 Bailey Woods Road, Dacula, GA 30019.

***5***. Defendant Ameris Bank is a banking institution with its principal place of business in Georgia, which provided the initial loan to the Plaintiff.

***6***. Defendant Truist Bank is a banking institution with its principal place of business in North Carolina, which acquired the loan from Ameris Bank on December 1, 2022.

***7***. Defendant Specialized Loan Servicing LLC is a mortgage loan servicer with its principal place of business in Colorado, which acquired the loan from Truist Bank.

## ***Factual Background***

***8***. On November 11, 2021, Plaintiff purchased the property at 832 Bailey Woods Road, Dacula, GA 30019, as his primary residence and borrowed $236,000.00 from Ameris Bank To Build The Home From The Ground Up The loan was secured by a mortgage on the property.

***9***. The monthly mortgage payment agreed upon was $1,162.21. Which included principal interest, taxes, and insurance (PITI)

***10***. On December 1, 2022, Ameris Bank sold the loan to Truist Bank, which informed Plaintiff that they would be the new loan holders and would collect payments effective immediately. No new loan agreement was executed between plaintiff and Truist Bank.

***11***. Despite no new agreement being signed between Plaintiff and Truist Bank, Plaintiff continued to make timely monthly payments of $1,162.21 as per the original agreement with Ameris Bank.

***12***. In February 2023, Truist Bank unilaterally increased the monthly payment to $3,034.44, citing a shortage in the escrow account without providing detailed justification or prior notice required under RESPA.

***13***. Plaintiff disputed this increase by visiting the local bank and making numerous phone calls, receiving no satisfactory explanation for the increase and or evidence supporting the escrow shortage violating RESPA's requirement for accurate and timely disclosure from Truist Bank.

***14***. After three months of dispute, Truist Bank sold the loan to Specialized Loan Servicing LLC (SLS).

***15***. SLS provided Plaintiff with a new contract for a trial period of three months with monthly payments of $1,662.27, which Plaintiff paid on time from December 1, 2023, to March 1, 2024.

***16***. After the trial period, SLS claimed the mortgage account was delinquent and sent Plaintiff numerous letters with varying amounts due, all outside the contract agreement causing confusion and distress.

***17***. On May 13, 2024, Plaintiff received a certified mail notice from Gwinnett County of foreclosure proceedings scheduled for July 2, 2024.

## *Claims for Relief*

### *Count I: Violation of 42 U.S.C. § 1983 - Deprivation of Constitutional Rights*

***18***. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

***19***. Defendants, acting under color of state law, deprived Plaintiff of his rights under the Fifth and Fourteenth Amendments of the United States Constitution, including the rights to due process and equal protection.

***20***.Truist Bank's unilateral alteration of the loan terms without due process, including proper notice and the opportunity to contest the changes, constitutes a deprivation of Plaintiff's property without due process of law, in violation of the Fifth and Fourteenth Amendments.

***21***.Defendants' arbitrary and unjustified actions in altering loan terms and initiating foreclosure proceedings without adequate justification deprived Plaintiff of equal protection under the law.

***22***.In the case of Goldberg v. Kelly, 397 U.S. 254 (1970), the Supreme Court held that due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. Defendants' actions denied Plaintiff this opportunity.

### *Count II: Violation of Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.*

***23***. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

***24***.Truist Bank violated RESPA by failing to provide accurate and timely information regarding the escrow account and the reasons for the increase in monthly payments.

***25***.Truist Bank further violated RESPA by failing to respond adequately to Plaintiff's qualified written requests and disputes concerning the loan servicing. According to 12 U.S.C. § 2605(e), servicers must acknowledge receipt of written inquiries from borrowers and provide a substantive response within specified timeframes.

***26***.SLS also violated RESPA by failing to honor the terms of the trial period agreement and by sending conflicting and confusing statements regarding amounts owed, further complicating Plaintiff's ability to manage his loan.

***Count III: Violation of Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.***

***27***.Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

***28***.Defendants SLS and Truist Bank engaged in abusive, deceptive, and unfair practices in violation of the FDCPA by providing conflicting information regarding the amounts owed and initiating foreclosure proceedings without proper justification or explanation.

***29***.Defendants violated 15 U.S.C. §§ 1692e and 1692f by misrepresenting the amount, character, and legal status of the debt and by employing unfair practices to collect the debt.

***30***.In Heintz v. Jenkins, 514 U.S. 291 (1995), the Supreme Court held that attorneys who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation, are covered by the FDCPA. Similarly, SLS and Truist Bank, by engaging in unfair debt collection practices, fall under the purview of the FDCPA.

***Count IV: Breach of Contract***

***31***.Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

***32***.Defendants breached the contractual agreement by unilaterally increasing the monthly payment amount without basis and failing to honor the terms agreed upon during the trial period with SLS.

***33***.The actions of Truist Bank and SLS directly contradict the agreed-upon terms, causing financial harm and distress to Plaintiff.

***34***.Under Georgia law, specifically O.C.G.A. § 13-6-1, a breach of contract occurs when one party fails to perform the terms agreed upon in a contract without a legitimate legal excuse.

***Count V: Violation of Georgia Fair Business Practices Act (FBPA), O.C.G.A. § 10-1-390 et seq.***

***35***.Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

***36***.Defendants engaged in unfair and deceptive business practices in violation of the Georgia Fair Business Practices Act by misrepresenting loan terms, failing to provide accurate account information, and initiating foreclosure without proper grounds.

***37***.Under the FBPA, consumers are protected from unfair and deceptive acts or practices in the conduct of consumer transactions. Defendants' actions in altering loan terms and providing misleading information constitute violations of this statute.

## ***Prayer for Relief***

*WHEREFORE*, Plaintiff prays for judgment against Defendants as follows:

***A***. A declaration that Defendants' actions violated Plaintiff's constitutional rights and federal laws.

***B***. An order enjoining Defendants from proceeding with the foreclosure on Plaintiff's property.

***C***. Compensatory damages in an amount to be determined at trial.

***D***. Statutory damages pursuant to RESPA and the FDCPA.

***E***. Punitive damages for Defendants' willful and malicious conduct.

***F***. An award of attorneys' fees and costs incurred in bringing this action.

***G***. Monetary damages in the amount of $10,000,000 in real currency.

***H***. Such other and further relief as this Court deems just and proper.

## ***Jury Demand***

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/Ioan Sofinet*
832 Bailey Woods Road,
Dacula, GA, 30019

***Verification***

The undersigned, being duly sworn, deposes and says that the foregoing statements are true and correct to the best of his/her knowledge, information, and belief.

Sworn and subscribed before me
this 3 day of June, 2024.

Jerry Davis
Notary Public
My Commission Expires: 11-5-26

JERRY DAVIS
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Comm. Expires Nov. 5, 2026

Specialized Loan
**Servicing**

Part of the Computershare Group
6200 S. QUEBEC ST., STE. 300
GREENWOOD VILLAGE, CO 80111

To obtain information about your account, contact us at: www.sls.net or 1-800-315-4757: M – F, 6:00 AM until 6:00 PM MT. We accept calls from relay services. We provide translation services for individuals who indicate a language preference other than English. Se habla español.

**Mortgage Statement**
Statement Date: 09/13/23

| Account Number | 1032801223 |
|---|---|
| Payment Due Date | 10/01/23 |
| **Total Amount Due‡** | **$11,394.30** |

*If payment is received after 10/16/23, $0.00 late fee will be charged.*

IOAN SOFINET
832 BAILEY WOODS RD
DACULA, GA 30019

Property Address:
832 BAILEY WOODS RD
DACULA, GA 30019

| Account Information | |
|---|---|
| Outstanding Principal | $229,475.28 |
| Escrow Balance | $-2,438.84 |
| Unapplied/Suspense | $0.00 |
| Deferred Principal | $0.00 |
| Deferred Interest | $0.00 |
| Other Deferred Amounts | $0.00 |
| Interest Rate | 4.25000% |
| Prepayment Penalty | No |

| Explanation of Amount Due | |
|---|---|
| Principal | $355.72 |
| Interest | $806.49 |
| Escrow (for Taxes and Insurance) | $698.10 |
| **Regular Monthly Payment** | **$1,860.31** |
| Total New Fees Charged | $0.00 |
| Past Due Amounts | $9,533.99 |
| Unapplied/Suspense | ($0.00) |
| **TOTAL AMOUNT DUE‡** | **$11,394.30** |

**Past Payments Breakdown**

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Unapplied/Suspense | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

**Important Messages**

**If your account has been approved for a forbearance plan, your payment is not due until the end of that plan. If your account includes a Buydown agreement, the difference in the Regular Monthly Payment Amount and Total Amount Due reflects credit of amounts available pursuant to the agreement.**

You are currently due for the 05/01/23 payment.

Your loan is past due. Please call today at 1-800-306-6062 to make arrangements.

‡**Amount to bring loan current:** Please note, if your account is past due, this amount may not include all fees or other amounts necessary to fully reinstate your loan. Please contact SLS at 1-800-306-6062 for a full reinstatement quote.

****Delinquency Notice****

**If You Are Experiencing Financial Difficulty:** You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees (as reflected above) or other collections costs. SLS may report additional information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As of September 13, 2023 you are 135 days delinquent on your mortgage loan.

Recent Account History

Payment due 04/01/23: Amount Due $0.00
Payment due 05/01/23: Amount Due $1,860.31
Payment due 06/01/23: Amount Due $1,860.31
Payment due 07/01/23: Amount Due $1,860.31
Payment due 08/01/23: Amount Due $1,860.31
Payment due 09/01/23: Amount Due $1,860.31
10/01/23: Current Payment Due $1,860.31
Total Unpaid Fees, Charges, and Payment Advances/Uncollected Escrow Payments: $232.44

**Total $11,394.30 due. You must pay this amount to bring your loan current.‡**

**Transaction Activity (09/02/23 to 09/13/23)**

| Effective Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/ Charges | Unapplied/ Suspense* |
|---|---|---|---|---|---|---|---|---|
| ***NO TRANSACTIONS TO REPORT*** | | | | | | | | |

**PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.**

Specialized Loan Servicing
Part of the Computershare Group

6200 S. QUEBEC ST., STE. 300
GREENWOOD VILLAGE, CO 80111

000181

IOAN SOFINET
832 BAILEY WOODS RD
DACULA, GA 30019

RE: Loan Number: 1032801223
Property Address:
832 BAILEY WOODS RD
DACULA, GA 30019

04/02/2024

Dear IOAN SOFINET,

We recently received a payment on your account applied to your loan on 04/02/2024. This payment was less than the total amount needed to bring the above referenced account current. However, we have applied the payment to the account in accordance with the terms of the mortgage documents. The total amount required to reinstate the account after we applied the payment is $13,615.31.

We previously sent you a Notice of Default and Notice of Intent to Accelerate informing you of the amount needed to reinstate the loan. The expiration date of 04/21/2024 provided on that notice remains in effect. If the amount due is not received by the expiration date, we will accelerate the maturity of the loan and foreclosure proceedings may begin or continue.

We reserve the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount due is sent to us, we can keep the payment and apply it to the account but still proceed to foreclosure since the default would not have been cured.

If the loan is already in foreclosure, a scheduled foreclosure sale will be completed unless the foreclosure sale is suspended or canceled or unless the account is fully reinstated or paid off in accordance with the loan documents and applicable law prior to the scheduled foreclosure sale.

Past due payments will also continue to be reported, as applicable, until the account is brought current.

**PLEASE SEE IMPORTANT INFORMATION ON THE NEXT PAGE**

898

Specialized Loan Servicing LLC
6200 S. Quebec St., Ste. 300
Greenwood Village, CO 80111

Specialized Loan
Servicing
Part of the Computershare Group

IOAN SOFINET
832 BAILEY WOODS RD
DACULA, GA 30019

000058

Register your new account
Scan the QR code with your smartphone camera or visit https://qrco.de/sls-login
You'll need your new account number
1032801223

09/08/2023

# Hello and Welcome

Dear Ioan Sofinet,

## Your account has now been transferred to Specialized Loan Servicing LLC ("SLS")

We want to take this opportunity to welcome you, and let you know that we'll be here to help you manage your account. In this pack you'll find important new information about your account and your rights as a homeowner. Please review it carefully.

### Why do I have a new mortgage servicing company?

Within the mortgage industry, loans are often transferred from your prior servicer to a company like SLS that concentrates on processing payments, providing escrow administration and general activities associated with your mortgage loan.

### What do I need to do now?

**To view your new account, please register at https://sls.servicingloans.com/login to verify your details and to confirm or set up your payments.**

Make managing your account even easier! You can also enroll online for email alerts, view documents, make and manage payments, and select your communications preferences.

Remember, we are here to assist you through this process and address any of your concerns.

Thank you, and again, welcome to SLS. We're happy to have you with us. We accept calls from relay services.

**Your SLS Customer Service Team**

Property address
832 BAILEY WOODS RD
Dacula, GA 30019
Previous servicer
Truist Bank
Account transfer start date
09/01/2023

# Mortgage account statement

**Property address**
832 Bailey Woods Rd
Dacula, GA 30019

PAID 02-10-23
$1,320.52
Conf:# 99930977

+ 0717544 000004590 09ST01 00936501
IOAN SOFINET
836 BAILEY WOODS RD
DACULA GA 30019-1232

**Visit us online at Truist.com/myhomeloan**

| | |
|---|---|
| Client Services: | 800.634.7928 |
| Hearing Impaired TDD: | 888.833.4228 |
| Monday to Friday: | 8 am to 8 pm ET |
| Saturday: | 9 am to 3 pm ET |

| | |
|---|---|
| Loan Number: | 6640383400 |
| Payment Due Date: | 02/01/2023 |
| Amount Due: | $1,320.52 |

*If payment is received after 02/16/2023, a $58.11 late fee will be charged.

Statement Date: 01/18/2023

| Loan information | |
|---|---|
| Loan number | 6640383400 |
| Principal balance[1] | $230,516.35 |
| Escrow balance | $7,877.26- |
| Maturity date | DECEMBER 2051 |
| Interest rate | 4.250% |
| Partial payments balance (unapplied) | $0.00 |

[1]Your unpaid principal balance is not your payoff amount.
**Please contact us at 800.634.7928 to request a payoff amount.**

| Explanation of amount due | |
|---|---|
| Principal | $345.80 |
| Interest | $816.41 |
| Escrow (taxes & insurance) | $158.31 |
| Optional products | $0.00 |
| Other | $0.00 |
| **Total regular monthly payment** | **$1,320.52** |
| Total fees and charges | $0.00 |
| Past due payment(s) | $0.00 |
| **Total amount due** | **$1,320.52** |

| Past payment breakdown | Paid last month | Paid Year to Date |
|---|---|---|
| Principal | $344.58 | $344.58 |
| Interest | $817.63 | $817.63 |
| Escrow (taxes & insurance) | $158.31 | $158.31 |
| Fees and charges | $0.00 | $0.00 |
| Optional products | $0.00 | $0.00 |
| Other | $0.00 | $0.00 |
| **Total paid** | **$1,320.52** | **$1,320.52** |
| Partial payments (unapplied)* | $0.00 | $0.00 |

***Partial Payments: Any partial payments that you make are not applied to your mortgage, but instead are held in a suspense account. Once the sum of your partial payments equals one full payment we will apply that amount to your mortgage.**

**Important Message**

**You can access a list of the approved HUD homeownership counselors and counseling organizations at hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling 800-569-4287.**

**Need payment assistance? Please check out the back of this statement to learn how you can get payment relief.**

Here are your transactions since your last statement (includes fees/charges).

| Date | Description | Principal | Interest | Escrow | *Fees/Other | Total |
|---|---|---|---|---|---|---|
| 01/18 | PAYMENT | $344.58 | $817.63 | $158.31 | | $1,320.52 |
| 01/18 | REPAY ESCROW ADVANCE | | | $158.31- | | |

*Fees/Other-Optional products, unapplied funds, servicing fees, and other charges.



Truist Bank
P.O. Box 27767
Richmond, VA 23261-7767

IOAN SOFINET
832 BAILEY WOODS RD
DACULA GA 30019-1232

**Mortgage Loan Number:**
6640383400

**Property Address:**
832 Bailey Woods Rd
Dacula GA 30019

July 10, 2023

Dear Client(s):

The funds that we recently received from you were insufficient to bring your loan current. A portion of the funds were applied to outstanding fees, if applicable.

The enclosed check in the amount of $1,195.80 is being returned to you as we cannot apply these funds to your loan. To bring your delinquent loan to a current status, remit $5,697.15 to:

Truist Bank
P.O. Box 1868
Greenville, SC 29602-1868

If you have any questions, please contact the Home Preservation Center at 855.223.4680 to have one of our qualified teammates assist you throughout the loss mitigation process. Our standard business hours are 8 a.m. to 8 p.m., Monday through Friday and 9 a.m. to 1 p.m., ET Saturday.

Sincerely,

Truist Bank

Enclosure: Disclosure(s)
Check Number: 2023090921

HOLD TO LIGHT TO VIEW TRUE WATERMARK IN PAPER HEAT SENSITIVE RED LOCK DISAPPEARS WHEN HEATED

TRUIST BANK
TRUIST BANK
REMITTANCE CLEARING
019
6640383400
6640383400

068-0002
0510

| CHECK NO. | MO/DAY/YR |
|---|---|
| 2023090921 | 07/07/2023 |

FOR MISAPPLICATION REVERSAL

One Thousand One Hundred Ninety Five and 80/100 Dollars

| AMOUNT |
|---|
| $1,195.80 |

VOID IF NOT CASHED WITHIN 180 DAYS

PAY TO THE ORDER OF

IOAN SOFINET
832 BAILEY WOODS RD
DACULA GA 30019-1232

AUTHORIZED SIGNATURE

⑈2023090921⑈ ⑆051000020⑆ 201721775⑈

Visit us online at **truist.com/myhomeloan**
Learn how escrows work at **truist.com/myescrow**
Client Services: 1-800-634-7928
Monday to Friday: 8 am to 8 pm ET
Saturday: 9 am to 3 pm ET

\+ 0755334 000000352 09STE5 00932940
IOAN SOFINET
832 BAILEY WOODS RD
DACULA GA 30019-1232

## Annual escrow shortage account disclosure statement

| | |
|---|---|
| Loan Number: | 6640383400 |
| Statement prepared date: | 05/10/2023 |
| Review period: | 12/01/22 - 02/28/23 |
| Property address | 832 BAILEY WOODS RD DACULA GA 30019 |
| New monthly payment amount | $1,860.31 |
| New payment effective date | 03/01/2023 |

**There's a shortage in your escrow account. Here's what that means.**

When you make a mortgage payment each month, we put a portion of that payment into an escrow account to pay your tax and insurance bills for you. However, Truist can't control how much you will be charged, and these amounts may vary annually — making it difficult to predict escrow perfectly. When your tax and insurance bills go up, it can cause a "shortage" in your escrow account. On the other hand, if your taxes and insurance go down, you may end up with a "surplus."

To stay on top of this, **we review your escrow account at least once a year** to check that we are collecting enough from your monthly payments to cover your bills when they come due. **Following our review, we issue this statement.** Please note,information contained within this statement is accurate as of the Statement Prepared Date above and does not reflect any account activity since that date.

**Your monthly payment is changing, and here is why.**

Your shortage will be spread over the next 36 months. Your monthly escrow amounts will also change based on your current tax and insurance bills. These two changes will increase your monthly mortgage payment.

While all of the details about your escrow account can be found within this document, we know you may still have questions. **Some of your questions may be answered in the FAQ page attached to this statement.** Still have questions? We're here to help. Reach out using the contact information above.

### You have a shortage in your escrow account

The shortage results from a comparison of your required lowest balance to the lowest balance we estimate you would have if no adjustments were made to your escrow account. Check out section 3 on page 2 to see how we arrived at these numbers.

| | Lowest balance amount |
|---|---|
| Projected escrow lowest balance for the coming year | $5,393.32- |
| Required escrow lowest balance | $1,038.86 |
| This difference created a shortage in your escrow account | $6,432.18- |
| **Shortage** spread over 36 months (This amount will be added to your principal and interest amounts) | **$178.67** |

### Your new monthly escrow amounts

We took a look at your most recent tax and insurance bills to calculate your new monthly escrow amount. Projections are based on any known changes from last year to this year, but may not include adjustments that could happen during the upcoming year for reasons shown in section 2 on page 2. Please refer to section 1 on page 2 to see how we arrived at these numbers.

| | New annual escrow payment | New monthly escrow amount |
|---|---|---|
| Taxes | $4,477.30 | $373.11 |
| Insurance | $1,755.85 | $146.32 |
| **Total** | **$6,233.15** | **$519.43** * |

*This amount is needed each month to cover anticipated tax bills and insurance premiums for the coming year and will be added to your principal and interest amounts.

### Effective 03/01/2023, your new monthly mortgage payment will be: $1,860.31

Wondering how all of this impacts your monthly payments? This section breaks it down for you. As you can see, the shortage will be spread over the next 36 months as noted in this table, and your escrow amount will be adjusted to match your tax and insurance bills. Please contact us for other payment options.

| | Current monthly payment | New monthly payment |
|---|---|---|
| Principal and interest | $1,162.21 | $1,162.21 |
| Escrow account deposit | $1,872.23 | $519.43 |
| Escrow shortage | | $178.67 |
| **Total payment** | **$3,034.44** | **$1,860.31** |

### Here are your next steps

1. Check out the FAQs attached to this statement if you are interested in alternatives to spreading the shortage over 36 months.
2. Contact your local tax office or insurance company with any questions about your billing amounts.
3. Manage any changes to your payment:
   - ACH and recurring draft payments – The amount of your draft will automatically be updated.
   - Payments via third-party or bill pay service – you will need to update your payment amount with that service provider.
4. Visit **Truist.com/myescrow** or call us with any questions.

# Mortgage account statement

**Property address**
832 Bailey Woods Rd
Dacula, GA 30019

+ 0726430 000005316 09ST01 00936501
IOAN SOFINET
836 BAILEY WOODS RD
DACULA GA 30019-1232

**Visit us online at Truist.com/myhomeloan**

| | |
|---|---|
| Client Services: | 800.634.7928 |
| Hearing Impaired TDD: | 888.833.4228 |
| Monday to Friday: | 8 am to 8 pm ET |
| Saturday: | 9 am to 3 pm ET |

| | |
|---|---|
| Loan Number: | 6640383400 |
| Payment Due Date: | 03/01/2023 |
| Amount Due: | $3,034.44 |

*If payment is received after 03/16/2023, a $58.11 late fee will be charged.

Statement Date: 02/13/2023

| Loan information | |
|---|---|
| Loan number | 6640383400 |
| Principal balance[1] | $230,170.55 |
| Escrow balance | $7,977.30- |
| Maturity date | DECEMBER 2051 |
| Interest rate | 4.250% |
| Partial payments balance (unapplied) | $0.00 |

[1]Your unpaid principal balance is not your payoff amount.
**Please contact us at 800.634.7928 to request a payoff amount.**

| Past payment breakdown | Paid last month | Paid Year to Date |
|---|---|---|
| Principal | $345.80 | $690.38 |
| Interest | $816.41 | $1,634.04 |
| Escrow (taxes & insurance) | $158.31 | $316.62 |
| Fees and charges | $0.00 | $0.00 |
| Optional products | $0.00 | $0.00 |
| Other | $0.00 | $0.00 |
| **Total paid** | **$1,320.52** | **$2,641.04** |
| Partial payments (unapplied)* | $0.00 | $0.00 |

***Partial Payments: Any partial payments that you make are not applied to your mortgage, but instead are held in a suspense account. Once the sum of your partial payments equals one full payment we will apply that amount to your mortgage.**

| Explanation of amount due | |
|---|---|
| Principal | $347.02 |
| Interest | $815.19 |
| Escrow (taxes & insurance) | $1,872.23 |
| Optional products | $0.00 |
| Other | $0.00 |
| **Total regular monthly payment** | **$3,034.44** |
| Total fees and charges | $0.00 |
| Past due payment(s) | $0.00 |
| **Total amount due** | **$3,034.44** |

## Important Message

**You can access a list of the approved HUD homeownership counselors and counseling organizations at hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling 800-569-4287.**

**Need payment assistance? Please check out the back of this statement to learn how you can get payment relief.**

Here are your transactions since your last statement (includes fees/charges).

| Date | Description | Principal | Interest | Escrow | *Fees/Other | Total |
|---|---|---|---|---|---|---|
| 02/10 | PAYMENT | $345.80 | $816.41 | $158.31 | | $1,320.52 |
| 02/10 | REPAY ESCROW ADVANCE | | | $158.31- | | |
| 02/01 | HAZARD INSURANCE | | | $258.35- | | |
| 02/01 | ESCROW ADVANCE | | | $258.35 | | $258.35 |

*Fees/Other-Optional products, unapplied funds, servicing fees, and other charges.

Please include coupon with your check. Please do NOT send cash. Is your contact information current? Visit Truist.com to make updates. Thank you.

IOAN SOFINET

**Loan Number** **Statement date** **Payment due date** **Amount due**

 Truist Bank
P.O. Box 27767
Richmond, VA 23261-7767

Specialized Loan Servicing LLC
**Loan Number:** 1032801223

**Truist Bank Mortgage Loan Number:** 6640383400

**Property Address:**
832 Bailey Woods Rd
Dacula GA 30019

+ 0782325 000001763 09STL2 00936534
IOAN SOFINET
832 BAILEY WOODS RD
DACULA GA 30019-1232

**August 10, 2023**

Dear Client(s):

**NOTICE OF SERVICING TRANSFER**

The servicing of your mortgage loan is being transferred, effective September 1, 2023. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

Truist Bank is now collecting your payments. Truist Bank will stop accepting payments received from you after August 31, 2023.

Specialized Loan Servicing LLC will collect your payments going forward. Your new servicer will start accepting payments received from you on September 1, 2023.

Send all payments due on or after September 1, 2023 to Specialized Loan Servicing LLC at this address: P.O. Box 60535, , City of Industry, CA 91716-0535.

If you have any questions for either your present servicer, Truist Bank, or your new servicer Specialized Loan Servicing LLC, about your mortgage loan or this transfer, please contact them using the information below:

| **Current Servicer:** Truist Bank | **New Servicer:** Specialized Loan Servicing LLC |
|---|---|
| **Address for Borrower Payments:** P.O. Box 79041 Baltimore, MD 21279-0041 | **Address for Borrower Payments:** P.O. Box 60535 City of Industry, CA 91716-0535 |
| **Address for Borrower Correspondence:** Truist Bank Attn: Client Service Dept. P.O. Box 26149 Richmond, VA 23260-6149 | **Address for Borrower Correspondence:** Physical Address: 6200 S. Quebec Street, Greenwood Village, CO 80111 Correspondence Address: P.O. Box 636005 Littleton, CO 80163-6005 |
| **Website:** truist.com/myhomeloan | **Website:** www.sls.net |
| **Customer Service Toll-Free Number:** 800.634.7928 | **Customer Service Toll-Free/Collect Number:** 800.315.4757 |
| **Customer Service Business Hours:** 8 a.m. to 8 p.m., Monday through Friday, and 9 a.m. to 3 p.m., ET, on Saturday. | **Customer Service Business Hours:** 6 am to 6 pm (Mountain Time) Monday - Friday |

For more information, or if you should have any questions after September 1, 2023, please contact Specialized Loan Servicing LLC using any of the available contact options listed above.

Important note about insurance: If optional insurance premiums such as life, accidental death, disability, etc.

Truist Bank
P.O. Box 27767
Richmond, VA 23261-7767

+ 0702592 000023532 09STMS 00936592
IOAN SOFINET
836 BAILEY WOODS RD
DACULA GA 30019-1232

**Ameris Bank By Dmi**
**Loan Number:**
1490368238

**Truist Bank**
**Mortgage Loan Number:**
6640383400

**Property Address:**
832 Bailey Woods Rd
Dacula GA 30019

December 3, 2022

Dear Client(s):

**Welcome to Truist Bank, we are delighted to have you as a client.**

The servicing of your mortgage loan, which includes the collection of your mortgage loan payments, is being transferred from Ameris Bank By Dmi to Truist Bank, effective December 1, 2022.

We hope our partnership with you will differentiate us from other mortgage loan servicers. **Here are a few important pieces of information you need to know:**

- We are among the nation's largest mortgage servicers
- This change will NOT impact your initial mortgage agreement - your loan amount, interest rate, and/or mortgage due date
- Payments: Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you

**Logging onto Our Website**

- Log on to truist.com/signon
- Click on the Sign On link at the top right-hand corner of the page
- New clients can register and access their account information

**Payment Options**
We have the following payment options available to you:

1. **Automated Monthly Payments**:
   - Select *Mortgage Loan* from *My Accounts List*
   - Click *Pay*, then choose *Recurring*
   - We have also enclosed our "Recurring Payment Form" for your convenience
   - This is a free option

Once you have been set up on this program, you will receive a letter confirming your payment date selection and the date of your first automatic payment. *Please note: You should continue making your payments up until the date of your first automatic payment to avoid a delinquency on your account.*

2. **One-time Electronic Payments**:
   - Under the *Move Money* or *Pay* links, select *One-Time Payment* to enter your one-time payment information
   - Confirm the amount and enter the details of the account to be drafted before submitting
   - This is a free option

 Truist Bank
P.O. Box 27767
Richmond, VA 23261-7767

**Mortgage Loan Number:**
6640383400

+ 0758524 000004488 09STL2 00936534
IOAN SOFINET
832 BAILEY WOODS RD
DACULA GA 30019-1232

**Property Address:**
832 Bailey Woods Rd
Dacula GA 30019

May 23, 2023

Dear Client(s):

**Perhaps you forgot...**

We have not yet received your mortgage payment. As of the date of this letter, there is an overdue balance on your account of $1,976.53.

If you have made the above referenced mortgage payment, please disregard this letter. If you have not made your payment yet, the amount due on the day you make your payment may be greater than this amount because of interest, late charges, and other charges that may change from day to day. Please note if you pay the amount shown above, an adjustment may be necessary.

## Here are your payment options:

- **In person:** At any Truist Bank Branch
- **Online:** Visit us online at www.truist.com/signon
- **Over the phone:** Contact Truist Bank at 800.443.1032, and make your payment via our automated payment system, or speak to one of our Mortgage Payment Solutions representatives. Our business hours are from 8 a.m. to 10 p.m., Monday through Thursday, 8 a.m. to 8 p.m., Friday, and 9 a.m. to 1 p.m., ET, on Saturday.
- **Via mail:** As always, if you prefer to mail your payment to us, please send payments to:
  Truist Bank
  P.O. Box 26149
  Richmond, VA 23260-6149

  You can learn more about your payment options at truist.com/myhomeloan

## Do you need mortgage assistance?

We all hit rough patches. If you're struggling to pay your mortgage payment, there may be immediate help available.

**Don't stress. Take action. Contact us today.**

- **If you have been impacted by a natural disaster:** Call us or learn more at truist.com/myhomeloan
- **If you are impacted by COVID:** Call us or visit us at truist.com/myhomeloan



98

Specialized Loan Servicing, LLC
6200 S Quebec St., Ste 300
Greenwood Village, CO 80111

000003

Ioan Sofinet
832 Bailey Woods Road
Dacula, GA 30019




Specialized Loan
Servicing

Part of the Computershare Group

April 29, 2024

Ioan Sofinet
832 Bailey Woods Road
Dacula, GA 30019

RE: Loan Number: **xxxxxx1223**
Property Address: 832 Bailey Woods Road
Dacula, GA 30019

Dear Ioan Sofinet,

This letter is in response to your correspondence received by Specialized Loan Servicing, LLC ("SLS") on April 24, 2024 regarding validation of debt for the above-referenced mortgage loan account.

After review, SLS determined the documents submitted will not be accepted and cannot be used to offset your Loan. Your Note and Security Deed contain no provision which allow you to repay your loan by any other means other than payments as described in your promissory Note. Payments by personal check, Money order, cashier's check or Western Union Quick Collect are accepted.

Furthermore, as per Section 1 of the Security Deed, all payments must be in U.S. Currency. SLS will continue to service the Note and Security Deed as written and signed by you, the borrower. We have enclosed the following document for your reference:

- Copy of the Note
- Copy of the Security Deed

If you have any questions regarding this information, please contact Customer Care toll free at 1-800-315-4757, Monday through Friday, 6:00 a.m. until 6:00 p.m. MT. We accept calls from relay services. We provide translation services for individuals who indicate a language preference other than English. Se habla español.

Sincerely,

Joseph, Teller ID: 18802
Customer Care Support
Specialized Loan Servicing, LLC

Enclosure(s)

**PLEASE SEE IMPORTANT DISCLOSURES ON THE FOLLOWING PAGE**



Specialized Loan
Servicing
Part of the Computershare Group

**SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT. WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.**

**SUCCESSORS IN INTEREST - IF YOU ARE IN RECEIPT OF THIS COMMUNICATION PURSUANT TO YOUR STATUS AS A SUCCESSOR IN INTEREST TO THE SUBJECT PROPERTY, THIS NOTICE DOES NOT MAKE YOU LIABLE FOR THE MORTGAGE DEBT. UNLESS YOU ARE PERSONALLY LIABLE FOR OR HAVE ASSUMED THE MORTGAGE LOAN, YOU CANNOT BE REQUIRED TO USE YOUR ASSETS TO PAY THE MORTGAGE DEBT. THE LENDER HAS A SECURITY INTEREST IN THE PROPERTY AND A RIGHT TO FORECLOSE ON THE PROPERTY, WHEN PERMITTED BY LAW AND AUTHORIZED UNDER THE MORTGAGE LOAN CONTRACT.**



LOAN #: 7166297384
MIN: 1009207-0000298166-0

# NOTE

| November 30, 2021 | Marietta, | Georgia |
|---|---|---|
| [Date] | [City] | [State] |

832 Bailey Woods Rd, Dacula, GA 30019
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$236,250.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Ameris Bank, a Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.250 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **January 1, 2022.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 1, 2051,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1800 Parkway Place, Suite 820**
**Marietta, GA 30067**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$1,162.21.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01
ICE Mortgage Technology, Inc.
Page 1 of 3
F3200NOT 0107
F3200NOT (CLS)
11/30/2021 05:38 AM PST

142SL0020.Large_1st_5oz.142SL.0821136474_2352/000003/000053



LOAN #: 7166297384

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

LOAN #: 7166297384

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_______________________________________ (Seal)
IOAN SOFINET

Lender: Ameris Bank
NMLS ID: 408099
Loan Originator: Larry Brick
NMLS ID: 544340

[Sign Original Only]

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01
ICE Mortgage Technology, Inc. Page 3 of 3 F3200NOT 0107
F3200NOT (CLS)
11/30/2021 05:36 AM PST

142SL0020.Large_1st_5oz.142SL.0821136474_2352/000003/000055



98

# ALLONGE

**LOAN NUMBER: 7166297384**

**BORROWER(S): Ioan Sofinet**

**PROPERTY ADDRESS: 832 Bailey Woods Rd, Dacula, GA 30019**

**NOTE/LOAN AMOUNT: $236,250.00**

**NOTE/LOAN DATE: 11/30/2021**

***PAY TO THE ORDER OF:***
***Without recourse:***
***AMERIS BANK, A CORPORATION***

***BY:*** ________________________________
Robert S. Odom, Sr., Vice President



**DEED B: 59460 P: 00474**
**11/30/2021 02:57 PM Pgs: 17 Fees: $25.00**
**ITax: $709.50**
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 4332149810,

When recorded, return to:
Ameris Bank, c/o Docprobe, LLC
Attn: Final Document Department
1820 Swarthmore Avenue
P.O. Box 2132
Lakewood, NJ 08701

STRICKLAND & LINDSAY, LLP
P.O. BOX 249
WINDER, GA 30680
210625-S

Escrow No.: 2106258 1108
LOAN #: 7166297384

[Space Above This Line For Recording Data]

# SECURITY DEED

MIN: 1009207-0000298166-0
MERS PHONE #: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **November 30, 2021,** together with all Riders to this document.

(B) "Borrower" is **IOAN SOFINET, MARRIED MAN.**

Borrower is the grantor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is **Ameris Bank.**

Lender is **a Corporation,** organized and existing under the laws of **Georgia.**
Lender's address is **1800 Parkway Place, Suite 820, Marietta, GA 30067.**

(E) "Note" means the promissory note signed by Borrower and dated **November 30, 2021.** The Note states that Borrower owes Lender **TWO HUNDRED THIRTY SIX THOUSAND TWO HUNDRED FIFTY AND NO/100******************************** Dollars (U.S. **$236,250.00** )



98

When recorded, return to:
Ameris Bank, c/o Docprobe, LLC
Attn: Final Document Department
1820 Swarthmore Avenue
P.O. Box 2132
Lakewood, NJ 08701

STRICKLAND & LINDSAY, LLP
P.O. BOX 249
WINDER, GA 30680
210625-S

Escrow No.: 210625S 1108
LOAN #: 7166297384

[Space Above This Line For Recording Data]

# SECURITY DEED

MIN: 1009207-0000298166-0
MERS PHONE #: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **November 30, 2021,** together with all Riders to this document.
(B) **"Borrower"** is **IOAN SOFINET, MARRIED MAN.**

Borrower is the grantor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) **"Lender"** is **Ameris Bank.**

Lender is **a Corporation,** organized and existing under the laws of **Georgia.**
Lender's address is **1800 Parkway Place, Suite 820, Marietta, GA 30067.**

(E) **"Note"** means the promissory note signed by Borrower and dated **November 30, 2021.** The Note states that Borrower owes Lender **TWO HUNDRED THIRTY SIX THOUSAND TWO HUNDRED FIFTY AND NO/100*********************************** Dollars (U.S. **$236,250.00** )

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
ICE Mortgage Technology, Inc. Page 1 of 10 GAEDEED 0419
GAEDEED (CLS)
11/30/2021 05:36 AM PST

142SL0020,Large_1st_5oz.142SL.0821136474_2352/000003/000058



LOAN #: 7166297384

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2051.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [x] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] V.A. Rider
- [x] Other(s) [specify]

**Waiver of Borrower's Rights Rider, Closing Attorney Affidavit**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **County**
[Type of Recording Jurisdiction]
of **Gwinnett**
[Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: R2001 233**



98

LOAN #: 7166297384

which currently has the address of 832 Bailey Woods Rd, Dacula,
[Street] [City]

Georgia 30019 ("Property Address"):
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage



Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the



payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

LOAN #: 7166297384

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

142SL0020.Large_1st_5oz.142SL.0821136474_2352/000003/000063



LOAN #: 7166297384

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01
ICE Mortgage Technology, Inc. Page 7 of 10 GAEDEED 0419
GAEDEED (CLS)
11/30/2021 05:36 AM PST

142SL0020.Large_1st_5oz.142SL.0821136474_2352/000003/000064



LOAN #: 7166297384

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check





98

LOAN #: 7166297384

is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**



LOAN #: 7166297384

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.**

**If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

[signature] 11/30/2021 (Seal)

IOAN SOFINET DATE

[signature]

Unofficial Witness W. Michael Strickland

[signature]

Notary Public, Georgia

Barrow County

**Lender: Ameris Bank**
**NMLS ID: 408099**
**Loan Originator: Larry Brick**
**NMLS ID: 544340**

KATHY B. HOPKINS
My Commission Expires
NOTARY PUBLIC
12-08-2023
BARROW COUNTY, GEORGIA

